# United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 05-1582

_____

Terrick Alfred Williams,                    *
                                            *
            Appellant,                      *
                                            *       Appeal from the United States
    v.                                      *       District Court for the
                                            *       Eastern District of Missouri.
United States of America,                   *
                                            *              [PUBLISHED]
            Appellee.                       *

_____

Submitted: January 13, 2006
Filed: June 27, 2006

_____

Before SMITH and HANSEN, Circuit Judges, and BOGUE,[1] District Judge.

_____

HANSEN, Circuit Judge.

_____

[1] The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

Terrick Alfred Williams appeals from the district court's[2] denial of his 28 U.S.C. § 2255 motion in which he sought to vacate his carjacking and firearm convictions based on violations of his Sixth Amendment right to counsel. We affirm.

## I.

The details of Williams's prior convictions are set forth in his direct appeal, which we affirmed in United States v. Williams, 136 F.3d 547 (8th Cir. 1998), cert. denied, 526 U.S. 1003 (1999). The facts are repeated here only as relevant to Williams's § 2255 motion. Williams was charged with one count of carjacking and one count of attempted carjacking, violations of 18 U.S.C. § 2119 (1994), two counts of being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1) (1994), and two counts of using a firearm during a crime of violence, a violation of 18 U.S.C. § 924(c)(1) (1994), in relation to two carjacking incidents that occurred in 1995. Williams's first trial ended in a hung jury, but he was retried and a second jury convicted him on all counts. The district court[3] sentenced him to 450 months imprisonment.

Williams was convicted of carjacking a 1989 Mercury Cougar from Edith Cooper on January 2, 1995, and then attempting to carjack a BMW from Dr. Jill O'Har the morning of January 3. At trial, testimony was offered from Dr. O'Har and another witness to the January 3 carjacking, both of whom identified Williams as the perpetrator. Police had searched the two houses Williams frequented, and between the two locations, the police had recovered a revolver with Williams's fingerprints on

---

[2] The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

[3] The Honorable George F. Gunn, Jr., now deceased, presided over both of Williams's trials in the district court. Judge Sippel was later assigned to hear Williams's § 2255 motion.

it and several items that Ms. Cooper later identified as having been in her vehicle prior to the carjacking. Evidence also established that Williams's fingerprints were on a telescope that had been in the trunk of Cooper's car and that the Cooper vehicle was recovered on the same street where Williams was arrested. After being taken into custody by the police and later informed that he had been identified, Williams made an oral confession to a police officer that he had committed the carjackings. However, he later recanted that confession in a written statement. This evidence was presented to the jury at both trials.

The key difference between the two trials, which is the heart of the issue before us, is the testimony of Williams's alibi witness, Clara Williams. Clara was Williams's companion and testified at the first trial that she was with Williams from 7:30 a.m. the morning of January 3 until around 10:30 a.m. The second carjacking occurred at approximately 8:45 a.m. on January 3. Clara testified that they both attended a conference at their daughter's school until 8:30 or 8:45 a.m. and then traveled to the juvenile court for her son's court appearance that morning, arriving at approximately 9:00 a.m. or shortly thereafter. Williams's presence at the juvenile court was testified to and verified at both trials by several witnesses, including court personnel. Clara's testimony gave Williams an alibi only for the second carjacking, which occurred at approximately 8:45 a.m. on January 3. On cross-examination, however, Clara admitted that Williams in fact left her for a time that morning to borrow a car for them to use that day. In addition, there was testimony that the location of the second carjacking and the juvenile court were in close enough proximity that it would have been possible for Williams to have committed the crime and yet be seen in the courtroom around 9:00 a.m.

When it came time for her testimony on the afternoon of the second day of the second trial, Clara could not be found. She had been present for the first day and the morning of the second, had been subpoenaed, and knew that she was going to be

called to testify, yet Clara left the courthouse and told no one where she was going. Williams's attorney first conducted a short search for Clara in the area around the courtroom but did not locate her. After securing a brief recess to try to locate her witness, his attorney searched the rest of the courthouse to no avail. After the recess, trial counsel presented two other witnesses on behalf of Williams, and then over an extended lunch hour continued her search for Clara. Neither Williams nor his wife, Sharon, knew where Clara had gone. Counsel drove to locations Clara was known to frequent and checked her residence. Clara was not home, but counsel located Clara's and Williams's daughter Lily. As a last resort, his counsel asked Lily to testify as a partial alibi witness.

Back at the courthouse, his counsel and the prosecutor had an informal, off-the-record conference with the district court judge. Williams's counsel indicated she was interested in a further continuance in order to try to locate Clara, however the court seemed unwilling to grant such a request. Counsel never made a formal motion for a continuance nor did she ask that the court enforce the subpoena issued to Clara through a writ of body attachment. Instead trial continued, and counsel substituted Lily's testimony for that of Clara's. Lily testified that she had been with her parents at a school conference until approximately 8:30 or 8:45 a.m. that morning when she went to class. In addition to Lily's testimony, Williams also had the testimony of the witnesses who placed him in the juvenile court around 9:00 a.m. This left only a 15- to 30-minute window of time that was missing from the alibi testimony Clara would have provided, but it was during this 15 to 30 minutes that the crime occurred.

Williams filed this § 2255 motion in district court asserting a number of errors alleging the ineffective assistance of counsel. After holding an evidentiary hearing on his numerous claims, the district court denied the motion in its entirety but granted a certificate of appealability on one issue: whether or not counsel was ineffective for failing to present the alibi testimony of Clara Williams. Williams specifically argues

that counsel was ineffective in: 1) failing to formally ask for a continuance to locate Clara, 2) failing to ask for a writ of body attachment to enforce the subpoena, and 3) failing to move for admission of Clara's prior testimony as an alternative. Williams also argues in this appeal that the district court should have additionally granted certificates of appealability on the issues of: 1) whether his trial counsel was ineffective in failing to seek a stipulation as to Williams's status as a felon, which would have prevented the specifics of his prior convictions coming into the trial, and 2) whether his counsel on direct appeal was ineffective in failing to raise a claim based on Old Chief v. United States, 519 U.S. 172 (1997).

## II.

"We review the legal issues raised by the district court's denial of [Williams's] § 2255 motion de novo, but any underlying fact-findings are reviewed for clear error. Ineffective assistance of counsel claims raise mixed questions of law and fact, and we accordingly review those claims de novo." United States v. Davis, 406 F.3d 505, 508 (8th Cir. 2005), cert. denied, 126 S. Ct. 1083 (2006). "The applicable law here is well-established: post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense." Saunders v. United States, 236 F.3d 950, 952 (8th Cir.) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)), cert. denied, 533 U.S. 917 (2001).

Both parts of the Strickland test must be met in order for an ineffective assistance of counsel claim to succeed. Anderson v. United States, 393 F.3d 749, 753 (8th Cir.), cert. denied, 126 S. Ct. 221 (2005). The first part requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Review of counsel's performance by the court is "highly deferential," and we presume "counsel's conduct falls within the wide range of reasonable professional assistance." Id. The court does

not "second-guess" trial strategy or rely on the benefit of hindsight, id., and the attorney's conduct must fall below an objective standard of reasonableness to be found ineffective, United States v. Ledezma-Rodriguez, 423 F.3d 830, 836 (2005). The second part of the Strickland test requires that the movant show that he was prejudiced by counsel's error, and "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Anderson, 393 F.3d at 753-54 (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

When determining if prejudice exists, the court "must consider the totality of the evidence before the judge or jury." Id. at 695. As the district court noted, in this instance we add Clara's proffered testimony to the evidence that was before the jury in the second trial, and then "gauge the likely outcome of a trial based on this total body of evidence." McCauley-Bey v. Delo, 97 F.3d 1104, 1106 (8th Cir. 1996), cert. denied, 520 U.S. 1178 (1997). In doing this analysis, the court should be "mindful of (1) the credibility of all witnesses, including the likely impeachment of the uncalled defense witnesses; (2) the interplay of the uncalled witnesses with the actual defense witnesses called; and (3) the strength of the evidence actually presented by the prosecution." Id.

The district court determined that Williams's motion failed because he could not demonstrate prejudice based on his counsel's failure to present Clara's testimony to the jury. In doing so, the court determined that the likely outcome of the trial would not have been different had Clara's testimony been offered at the second trial, due to the overwhelming evidence against Williams and the fact that Clara's testimony in the first trial had been "thoroughly impeached on cross-examination." (Appellant's Add. at 13.) Williams argues that the district court used the wrong standard of review and as such erred in reaching its conclusion based on the evidence before it.

Based on the record before us and the standards we have articulated, we find no error in the district court's determination. The evidence against Williams was overwhelming, even factoring in Clara's testimony. In this case, there is no question as to whether or not Clara's testimony would have been impeachable; it in fact had been at the first trial. The jury would also have been able to consider the extent of her personal relationship with Williams in evaluating her credibility. In addition, while the jury did not hear Clara's alibi testimony, they did hear Lily's account of a substantial part of that morning, in conjunction with the other witnesses who placed Williams at juvenile court around 9:00 a.m. Thus the lack of Clara's testimony did not mean that there were no alibi witnesses on Williams's behalf at the second trial. While Clara's testimony could have provided an alibi for the exact time of the second carjacking, the Government offered several witnesses that directly contradicted what her testimony would have been, such as the statements and identifications of both the victim and witness of the second carjacking. After factoring Clara's testimony into all the evidence before the jury in the second trial, Williams has failed to show prejudice because the outcome likely would not have been different had her testimony been offered at the second trial. Even if counsel could have done more in Williams's defense in attempting to secure Clara's testimony, based on the strength of the evidence "we cannot say the outcome of the trial would have been different but for counsel's alleged errors." United States v. White, 341 F.3d 673, 681 (8th Cir. 2003), cert. denied, 541 U.S. 955 (2004).

"If the defendant cannot prove prejudice, we need not address whether counsel's performance was deficient." DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000). Because we agree with the district court's determination that Williams fails to meet the second part of the Strickland test, we need not address the first. However, if we were to look to an analysis of the first part of the Strickland test, Williams could not prevail here either. Counsel made several attempts to locate Clara to no avail and then made a strategic decision to substitute the testimony of Lily. We will not second-

guess trial strategy nor use the benefit of hindsight to determine what a better course of action may have been. See Anderson, 393 F.3d at 753. While Williams focuses on what more counsel could have done, that itself does not determine that her representation fell below a reasonably objective standard. Looking at the situation at that point in the trial, counsel's efforts to locate Clara when she voluntarily absented herself mid-trial in contravention of her subpoena, were reasonable and did not constitute ineffective assistance of counsel.

Williams also contends that the district court erred when it failed to grant a certificate of appealability on two other claims of ineffective assistance of counsel, both of which related to the use of Williams's prior convictions at trial and the Supreme Court's decision in Old Chief v. United States, 519 U.S. 172 (1997), which was not decided until after Williams was convicted. Williams claims that his trial counsel was ineffective for not demanding the use of a nonspecific stipulation of his status as a convicted felon and that his counsel on direct appeal was also ineffective for not raising the Old Chief issue on appeal. The ineffective assistance claims themselves are not on appeal before us because "[w]e have held that appellate review is limited to the issues specified in the certificate of appealability," Bryson v. United States, 268 F.3d 560, 562 (8th Cir. 2001) (internal marks omitted), cert. denied, 536 U.S. 963 (2002), and the district court declined to issue a certificate on these two issues. As such, we treat this appeal in part as an application for a certificate of appealability on these issues. Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997). We will grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Id. Williams has failed to do so here because trial counsel acted appropriately under the law as it existed at the time of the representation, appellate counsel performed reasonably in light of the relative weakness of any Old Chief claim Williams might have had, and Williams could not establish prejudice on these asserted grounds. We

therefore decline to grant a certificate of appealability for these remaining issues, and do not reach them.

## III.

Accordingly, we affirm the judgment of the district court.

_____