# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 11-2846

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Marty L. Luke, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 12, 2012
Filed: July 26, 2012

_____

Before LOKEN, GRUENDER, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Marty L. Luke moved to set aside his conviction and sentence under 28 U.S.C. § 2255. The district court[1] denied the motion. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

_____

[1]The Honorable Catherine D. Perry, Chief United States District Judge for the Eastern District of Missouri.

I

Police stopped Luke while he was riding in his wife's car near his parked truck. They suspected him of involvement in several recent burglaries based on: (1) eye-witnesses identifying him as the driver of a similar truck near the burglaries, (2) the recovery of stolen jewelry in Luke's brother's house during a planned search, and (3) observing Luke and his brother pawn jewelry similar to what was stolen. An officer testified that Luke and his wife gave permission to search the car, where police found jewelry matching the stolen items. Police impounded the car and drove Luke to his truck. An officer saw a box of ammunition on the front seat and asked to search the truck. Luke consented. The search revealed a pistol matching the one stolen in another recent robbery. Police arrested and searched Luke, finding more ammunition in his pocket. After his arrest, Luke was taken to the hospital to treat a mild concussion sustained earlier that day. He claims to have no memory of the day's events.

Luke waived his right to file pretrial motions, including any motion to suppress evidence. His attorney felt that the evidence was obtained legally and that a motion was meritless since Luke's sentence would be the same if any of the pistol/ammunition evidence was admitted. Before waiving his right to file pretrial motions, Luke asked his attorney for a second opinion; his attorney contacted the attorney in Luke's state case but received no response. Luke pled guilty to being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). He admitted that everything in the plea agreement was true and signed it. In the agreement, Luke admitted consenting to the search of his truck, and possessing the pistol and the ammunition. The court sentenced him to the statutory minimum of 180 months' imprisonment. Luke contends he asked his attorney to appeal his case, but his memory is unclear. He does recall that his brother advised

-2-

him to request an appeal, and "the guy doing the paperwork kept asking." Luke's attorney does not recall such a request, and there is no documentation of it.

At the time of his plea and sentence, Luke was taking several prescribed medications for bipolar disorder and schizophrenia. His attorney knew only that he was on prescribed medication. They discussed whether he should have a competency evaluation, but the attorney testified that Luke made a knowing choice not to seek it. Two doctors evaluated Luke after he filed his § 2255 motion. Dr. C. Robert Cloninger expressed reservations about Luke's capacity to assist in his defense but declined to conclude that Luke was incompetent. Dr. Tanya Cunic, however, testified that Luke was competent at all times. She also found that Luke's responses during testing were similar to patients who faked bad answers and exaggerated symptoms. Both doctors believed that the symptoms of Luke's schizophrenia did not affect his ability to communicate or understand and that he was fully capable of understanding right and wrong.

The district court ruled that Luke had no meritorious argument for suppressing evidence and that his attorney properly consulted and advised Luke on sound alternative strategies. The court also found no credible evidence that Luke requested an appeal. Evaluating both doctors' opinions, the court found that Luke had been competent to enter his guilty plea, and Luke was not deprived of effective counsel.

II

This court reviews the denial of a § 2255 motion de novo. ***Hodge v. United States***, 602 F.3d 935, 937 (8th Cir.), *cert. denied*, 131 S. Ct. 334 (2010). This court reviews with deference the "underlying findings of fact for clear error," including

credibility determinations. *Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1103 (8th Cir.), *cert. denied*, 132 S.Ct. 315 (2011), *quoting United States v. Regenos*, 405 F.3d 691, 692–93 (8th Cir.2005); *Yodprasit v. United States*, 294 F.3d 966, 969 (8th Cir. 2002). A finding is clearly erroneous when evidence in its entirety creates "a definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985), *quoting United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). Questions of ineffective legal assistance are mixed questions of law and fact. *Scott v. United States*, 473 f.3d 1262, 1263 (8th Cir. 2007).

A criminal defendant has the right to effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution. *Strickland v. Washington*, 466 U.S. 668, 685 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. A defendant must prove that (1) counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. *Id.* at 687; *see Williams v. United States*, 452 F.3d 1009, 1012 (8th Cir. 2006). A court may first examine the prejudice from the alleged deficiencies before examining the deficiencies themselves. *See Strickland*, 466 U.S. at 697. To establish prejudice, the defendant must demonstrate a reasonable probability that the result of the proceeding would have been different, but for counsel's deficiency. *Id.* at 694. A reasonable probability sufficiently undermines confidence in the outcome. *Id.* There is a "strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance." *Id.* at 689. Evaluating the alleged deficiency, a court should not allow hindsight to affect its analysis of whether counsel acted reasonably before and during trial. *See Hood. v. United States*, 342 F.3d 861, 863 (8th Cir. 2003), *quoting Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000) (considering counsel's conduct during representation and avoiding

judgement based on hindsight); *see also* **Strickland**, 466 U.S. at 689. In this case, Luke claims his counsel was ineffective by failing to (1) move to suppress evidence, (2) file an appeal when asked to do so, and (3) properly examine Luke's competence to assist in his own defense.

III

Luke waived his right to move to suppress evidence. His counsel recommended this strategy because he believed the evidence against him was obtained properly. Luke now contends that his counsel was ineffective for failing to file a motion to suppress evidence. When a defendant claims that counsel was ineffective by failing to litigate a Fourth Amendment challenge to a search and seizure, the defendant must prove that the claim is meritorious. **Kimmelman v. Morrison**, 477 U.S. 365, 375 (1986); *see* **United States v. Johnson**, 707 F.2d 317, 320 (8th Cir. 1983), *citing* **United States v. Easter**, 539 F.2d 663 (8th Cir. 1979) ("The failure to make a motion to suppress what is essentially the only evidence against a defendant can be sufficient to establish lack of diligence on the part of the attorney if the motion would have succeeded.").

Luke believes that police illegally obtained the jewelry from the car, the pistol and ammunition from his truck, and the ammunition from his pocket. He first attacks the initial stop, claiming police did not have probable cause to pull him over. "Probable cause to make a warrantless arrest exists when, considering all the circumstances, police have trustworthy information that would lead a prudent person to believe that the suspect had committed or was committing a crime." **United States v. Parrish**, 606 F.3d 480, 486 (8th Cir. 2010), *quoting* **United States v. Velazquez–Rivera**, 366 F.3d 661, 664 (8th Cir. 2004) (internal quotation marks omitted). *See* **United States v. Houston**, 548 F.3d 1151, 1153 (8th Cir. 2008), *quoting* **United States v. Martin**, 706 F.2d 263, 265 (8th Cir. 1983) ("a law

-5-

enforcement officer has reasonable suspicion when the officer is aware of 'particularized, objective facts which taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed'"). Police had eye-witness accounts placing Luke and his truck close to robberies and had linked several stolen items to him. Even without a warrant, police had probable cause for the initial stop.

Luke next argues that the search of his truck was improper because he does not remember consenting. This argument is irrelevant because police saw ammunition in plain view through the truck's window. True, to justify a warrantless seizure, "not only must the item be in plain view; its incriminating character must also be immediately apparent." *Horton v. California*, 496 U.S. 128, 136 (1990), *quoting* *Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971) (internal quotation marks omitted). Here, the police knew that Luke was a convicted felon, and that it was illegal for him to possess any firearms or ammunition under 18 U.S.C. § 924(e). A box of ammunition is a readily identifiable "single-purpose container" whose distinctive configuration allows police to infer its contents. *United States v. Banks*, 514 F.3d 769, 774 (8th Cir. 2008) (noting that "a gun case is the very model of a single-purpose container"). When the police saw the labeled box, they rationally assumed ammunition would be inside. The box's incriminating character as unlawfully possessed ammunition was immediately apparent, giving probable cause to search the truck. The seizure of the ammunition and pistol from inside the truck was proper.

After arresting Luke, police searched him and found ammunition in his pocket. This search was valid as incident to his arrest. *See* *Chimel v. California*, 395 U.S. 752, 762-63 (1969) ("When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape.").

-6-

Luke's counsel was not ineffective because any motion to suppress evidence would not have succeeded.

IV

Luke argues that he requested an appeal and that his counsel was ineffective for failing to file it. The district court found "no credible evidence" that Luke requested an appeal. This court must determine whether this finding was clearly erroneous. **Tinajero-Ortiz**, 635 F.3d at 1103. Failure to file an appeal at a client's request is ineffective assistance of counsel for the purposes of § 2255. **Yodprasit**, 294 F.3d at 969*, quoting* **Estes v. United States.**, 883 F.2d 645, 648 (8th Cir. 1989). While actual prejudice is not required, the attorney must have been aware of the client's desire to appeal. **Id.** "A bare assertion by the petitioner that he made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition." **Id.*, quoting* **Barger v. United States***, 204 F.3d 1180, 1182 (8th Cir.2000).

Luke testified that he has only a "slight memory" of telling his counsel he wanted to appeal, but assumes he made the request because his brother had "drove that into" him and "the guy that did the paperwork kept asking." Luke cannot remember anything immediately before or after allegedly requesting an appeal, and does not remember most of the events that occurred in his case including his initial appearance, pretrial motions, guilty plea hearing, or sentencing hearing.

To the contrary, Luke's counsel testified that Luke did not ask for a meeting after sentencing, let alone request an appeal, and that if Luke had made such a request, he would have filed an appeal. No emails, letters, or any other communication documents that Luke contacted his counsel to request an appeal. The

district court did not clearly err in finding Luke not credible. *See **Sanders v. United** **States***, 341 F.3d 720, 722 (8th Cir. 2003) (a defendant "must present some credible, non-conclusory evidence"). Luke's counsel was not ineffective for failing to file an appeal.

V

Luke contends that he was not mentally competent to stand trial, and his counsel was ineffective for failing to obtain a mental evaluation. A court should grant a motion to determine the competency of a defendant "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." **18 U.S.C. § 4241**; *see **Dusky v. United States***, 362 U.S. 402, 402 (1960) (the test for mental competency is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him"). Under *Strickland*, a mental evaluation showing that defendant was incompetent would sufficiently undermine the confidence in the trial's outcome. *See **Drope v. Missouri***, 420 U.S. 167, 171 (1975) ("a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceeding against him, to consult, with counsel, and to assist in preparing his defense may not be subjected to a trial"); *cf. **United States v. Turner***, 644 F.3d 713, 725 (8th Cir. 2011) ("not every manifestation of mental illness demonstrates incompetency to stand trial").

Luke's counsel consulted with him, and they agreed not to pursue a mental evaluation. Luke did not inform his counsel of his previous diagnoses. His counsel knew only that Luke was on prescribed medication. Luke now argues that his

counsel was ineffective for failing to request a mental evaluation. As a result of his § 2255 motion, the court ordered two evaluations. Dr. Cloninger met with Luke two times. Dr. Cloninger believed there was "real reason to question" Luke's competency, but could not conclude he was incompetent to assist in his own defense. Dr. Cloninger acknowledges that Luke knew his actions were illegal and wrong. Dr. Cunic, on the other hand, testified that Luke was competent at the time of his guilty plea and that none of his personality disorders affected his ability to assist counsel. Dr. Cunic observed Luke over 75 days, met with him formally several times (totaling 11 hours), and visited him informally during her rounds. Dr. Cunic testified that when evaluated, Luke did not make a full effort and gave answers that are typical of patients who fake or exaggerate their responses. The mental evaluations together indicate that Luke had a rational as well as a factual understanding of the proceedings against him and was able to assist his counsel. Further, the § 2255 court – which was also the plea court – found that Luke's appearance and demeanor during his plea indicated that he understood his offenses and the consequences of his plea.[2]

After considering Luke's mental evaluations, the district court correctly ruled that Luke's attorney had not been ineffective because a motion to obtain a mental evaluation would not have affected the outcome of the trial.

*******

The judgment of the district court is affirmed.

_____

_____

[2]Judge Perry presided over Luke's Plea hearing, sentencing, and evidentiary hearing. A district court is entitled to rely on its own recollections of a defendant's demeanor and credibility. *See* **Waddlington v. United States**, 428 F.3d 779, 784 n.2 (8th Cir. 2005), *citing* **United States v. Provost**, 969 F.2d 617, 619 (8th Cir. 1992).