# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1591

_____

Demario B. Griffin

*Movant - Appellant*

v.

United States of America

*Respondent - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: April 14, 2015
Filed: July 10, 2015
[Unpublished]

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

PER CURIAM.

DeMario Griffin appeals the district court's[1] denial of his petition for habeas relief challenging his conviction for being a felon in possession of ammunition and

_____

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

his sentence under the Armed Career Criminal Act (ACCA). Griffin argues that he received ineffective assistance of counsel because his defense attorney did not move to suppress the testimony of a law enforcement officer at Griffin's trial. Additionally, Griffin contends that his previous convictions for a drug crime and for domestic assault do not qualify as predicate crimes for ACCA purposes. We affirm.

## I. *Background*

On Saturday, May 13, 2006, Griffin's girlfriend, Kenya Rice, called 911 to report a domestic disturbance. When officers arrived at her residence, Rice told officers that Griffin fled after he had physically abused her and threatened her with a pistol. The officers asked if they could search the residence, and Rice consented. The officers did not recover the pistol but found two fully loaded magazines for a .45 caliber pistol and two boxes of .45 caliber ammunition.

Police arrested Griffin later that same day. Detective Martin Taraski of the Blue Springs, Missouri Police Department interviewed Griffin at the police station in the breathalyzer holding area. At trial, Detective Taraski testified that he conducted the interview in that holding area because of its convenient proximity to the jail holding area where Griffin was being held. Detective Taraski informed Griffin of his *Miranda*[2] rights. According to Detective Taraski's testimony, he gave Griffin a *Miranda* waiver form, Griffin read and understood the form, and Griffin signed it. According to Detective Taraski, upon questioning, Griffin admitted that he owned the ammunition found in Rice's apartment. Detective Taraski then informed Griffin that it was illegal for felons to possess such ammunition. Griffin responded that he did not know that he could not possess the ammunition.

Griffin was later released and was never charged by the state with a domestic-violence offense. Notwithstanding, federal authorities indicted Griffin for being a

---

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). Griffin pleaded not guilty. Griffin disputed that he ever admitted to owning or otherwise possessing the ammunition. Instead, both Griffin and Rice maintained that the ammunition was Rice's property. On advice of his counsel, Griffin waived his right to a trial by jury and proceeded to a bench trial.

At trial, Griffin's defense counsel sought to discredit Detective Taraski's testimony regarding Griffin's incriminating confession through cross-examination. On cross, Detective Taraski admitted that there was no available audio or video recording of Griffin's confession. Detective Taraski explained that no recording was done because he interviewed Griffin in the breathalyzer holding area. Detective Taraski did not know how to operate the audio and video recording systems in that room. The breathalyzer holding area did not have audio and video recording that could be operated from the holding area. Instead, the recording system for that room sent a feed that stored its footage offsite on a digital recording device at Blue Springs City Hall. Detective Taraski testified that unless specific footage is requested in a certain amount of time, the file is overwritten by later footage. Thus, even if Griffin's confession had been recorded, it would have been overwritten by subsequently recorded footage during the months before federal charges were filed.

The district court found Griffin guilty of being a felon in possession of ammunition. The court relied heavily on Officer Taraski's testimony, stating that

> the main evidence I'm convicting this defendant and finding beyond a reasonable doubt that he was in possession as a prior convicted felon of ammunition is the fact that after being given the *Miranda* warning, he told the officers, first of all, that he owned the ammunition, which is stronger than possession; and then, when being advised by the officer that he couldn't even possess it, then he stated that he wasn't aware he couldn't possess it.

The court further discussed Griffin's attempt to discredit Detective Taraski's testimony. As the court saw it, "the officer said the reason they didn't mess with it was because this case was filed in state court as a domestic-abuse case and there wasn't any consideration at that point that they were going to be charging this defendant with being a felon in possession of ammunition." Accordingly, the court accepted Detective Taraski's explanation of why a recording of Griffin's incriminating confession was not preserved.

At sentencing, the court considered whether Griffin qualified as an armed career criminal under the ACCA. *See* 18 U.S.C. § 924(e). The government argued that Griffin's three convictions for first-degree domestic assault, second-degree domestic assault, and possession of a controlled substance with intent to distribute fulfilled the ACCA's requirement for three predicate "violent felon[ies]" or "serious drug offense[s]." *Id.* Griffin's sole argument in opposition was that the first-degree domestic assault and second-degree domestic assault should not count as two separate predicate crimes because he was convicted of both crimes in the same criminal proceeding. The court was not persuaded. The court noted the temporal distinction between the first-degree and second-degree domestic assault incidents. The court found that "the assault in the first degree . . . occurred on April 29th, 2002, [and] the second one occurred on August 24th, 2002." Further, the court found "in between those two, [Griffin] had another assault case in Buchanan County . . . on May 30th, 2002, so there's an intervening conviction between the first assault and the second assault." Accordingly, the court rejected Griffin's argument and found that the three aforementioned convictions were "appropriate prior convictions" under the ACCA to classify Griffin as an armed career criminal. This enhancement raised Griffin's total offense level from 24 to 34; consequently, Griffin's Guidelines range was 262 to 327 months' imprisonment. The court ultimately sentenced Griffin to 327 months' imprisonment.

After failing to secure relief from his conviction and sentence on direct appeal, *see United States v. Griffin*, 394 F. App'x 349 (8th Cir. 2010) (per curiam) (unpublished), Griffin sought habeas relief pursuant to 28 U.S.C. § 2255. Griffin argued that his conviction should be vacated because he received ineffective assistance of counsel and his sentence should be vacated because his prior convictions for second-degree domestic assault and a drug offense did not qualify as predicate crimes under the ACCA. The district court rejected these arguments and denied habeas relief.

## II. *Discussion*

Griffin argues on appeal that his conviction should be vacated because he received ineffective assistance of counsel. Specifically, Griffin contends that his defense counsel was constitutionally deficient because he failed to move to suppress the testimony of the government's key witness, Detective Taraski. Griffin also argues that the district court erred by enhancing his sentence under the ACCA because his second-degree domestic assault and possession with intent to distribute crimes are not predicate offenses. "'We review the legal issues raised by the district court's denial of [a petitioner's] § 2255 motion de novo, but any underlying fact-findings are reviewed for clear error.'" *Williams v. United States*, 452 F.3d 1009, 1012 (8th Cir. 2006) (quoting *United States v. Davis*, 406 F.3d 505, 508 (8th Cir. 2005)).

### A. *Ineffective Assistance of Counsel*

First, Griffin argues that he received ineffective assistance of counsel because his counsel failed to move to suppress the testimony of Detective Taraski. "'Ineffective assistance of counsel claims raise mixed questions of law and fact, and we accordingly review those claims de novo.'" *Id.* (quoting *Davis*, 406 F.3d at 508). "When reviewing a claim of ineffective assistance of counsel, we follow the two-part test from *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)[.]" *Bear v. United States*, 777 F.3d 1008, 1011 (8th Cir. 2015). Under *Strickland*, Griffin bears the burden to "show that his attorney's performance was

-5-

objectively unreasonable or . . . fell below professional norms. [Griffin] then must demonstrate that because of his attorney's deficient performance, he was prejudiced; i.e., there is a reasonable probability that but for counsel's errors the result of the earlier proceedings would have been different." *Id.* (citing *Roundtree v. United States*, 751 F.3d 923, 925 (8th Cir. 2014)); *see also Strickland*, 466 U.S. at 687. "To establish a claim of ineffective assistance of counsel, a movant must meet *both* parts of the two-part test . . . ." *Anderson v. United States*, 393 F.3d 749, 753 (8th Cir. 2005) (emphasis added).

Griffin's claim of ineffective assistance of counsel fails because he cannot carry his burden on the first *Strickland* element—that his counsel's strategic decision not to move to suppress Detective Taraski's testimony fell below professional norms. This first element carries a high burden, requiring Griffin to show that his counsel made errors "so egregious as to have deprived [Griffin] of his Sixth Amendment right to counsel." *Id.* at 754. Further, we "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Rodela-Augilar v. United States*, 596 F.3d 457, 461 (8th Cir. 2010) (quoting *Strickland*, 466 U.S. at 689). "Whether as a matter of hindsight we agree" with a counsel's decisions "is not the test in applying the deferential presumption mandated by *Strickland*." *Id.* at 464 (citing *Wing v. Sargent*, 940 F.2d 1189, 1191–92 (8th Cir. 1991)).

Griffin maintains that Detective Taraski did not read him his *Miranda* rights prior to his interview and that he asked to speak to an attorney several times; thus, he argues that his counsel's failure to move to suppress Detective Taraski's testimony regarding Griffin's confession should have been suppressed. We cannot so conclude.

Griffin's counsel made a strategic decision based on reasonable judgment. Griffin's counsel explained that "[b]ecause the case was judge tried, no suppression motion was filed to exclude the testimony of Detective Taraski prior to trial. Counsel was of the opinion that the judge would accurately be able to determine the credibility

of the testimony and whether it was credible at trial." Also, counsel was aware that Griffin had signed a *Miranda* waiver form that the government ultimately introduced into evidence at Griffin's trial. While not successful, counsel's election to forego a suppression motion was part of a considered strategy to attack the credibility of the officer on cross-examination. In pursuit of this strategy, Griffin's counsel effectively elicited several damaging confessions from Detective Taraski on cross-examination, including that there was no recording of Griffin's confession and that there were other interview rooms available at the time of Griffin's interview that had recording equipment that arguably would have preserved footage of any alleged confession and *Miranda* warning. Such "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. Accordingly, we cannot find that Griffin's counsel's strategic decision denied Griffin his Sixth Amendment right to effective assistance of counsel.

## B. *Application of the ACCA*[3]

[3]As a preliminary matter, the government argues that this court should not consider the ACCA issues brought through Griffin's habeas petition because we have already decided the issues on direct appeal. *Griffin*, 394 F. App'x at 351–52. In that case, this court stated the following:

> As for Griffin's sentence, to the extent he preserved his challenges to the armed-career-criminal enhancement, we find no error. Griffin's qualifying convictions include his Missouri convictions for first-degree felony domestic assault, second-degree felony domestic assault, and possession with intent to distribute a controlled substance, the last of which occurred when Griffin was age seventeen but had been certified as an adult.

*Id.* at 351–52 (citations omitted). The government interprets this language as closing

Griffin next argues that the district court erred by applying the ACCA to enhance his sentence. He first argues that his conviction for second-degree domestic assault in Missouri is not a predicate "violent felony." 18 U.S.C. § 924(e)(2)(B). Additionally, he argues that his conviction for possession of a controlled substance with the intent to distribute in Missouri is not a predicate "serious drug offense." *Id.* § 924(e)(2)(A). "We review de novo the district court's determination of whether [Griffin]'s criminal record qualified him as an Armed Career Criminal." *United States v. Willoughby*, 653 F.3d 738, 741 (8th Cir. 2011) (citing *United States v. Gordon*, 557 F.3d 623, 624 (8th Cir. 2009)).

### 1. *Second-Degree Domestic Assault*

The ACCA enhances the sentences of defendants "convicted of being a felon in possession of a weapon or ammunition who has 'three previous convictions by any court . . . for a violent felony or a serious drug offense, or both.'" *United States v. Deroo*, 304 F.3d 824, 828 (8th Cir. 2002) (quoting 18 U.S.C. § 924(e)(1)). Griffin

---

the door to Griffin's current appeal on the ACCA issues because we have already decided the issue on direct appeal. *See English v. United States*, 998 F.2d 609, 613 (8th Cir. 1993) ("In the absence of an intervening change in the law, or newly discovered evidence, we will not reconsider any claim that was resolved on direct appeal in a [§] 2255 habeas proceeding." (citation omitted)).

Upon closer review, this court has not decided the legal issues being argued by Griffin in his habeas petition. On direct appeal, Griffin argued that the district court erred by counting his first-degree and second-degree domestic assaults as two separate predicate crimes and that his drug offense should not count as a predicate crime because he was only 17 years old at the time he committed it. This court specifically certified the following, different issues raised in Griffin's habeas petition: "whether the District Court properly concluded that Mr. Griffin's December 31, 2002 conviction for domestic assault in the second degree . . . is a crime of violence for purposes of the ACCA" and "whether Appellant's prior state drug conviction qualified as a serious drug offense for purpose of the [ACCA]." We reject the government's argument and proceed to consider the merits of Griffin's appeal.

argues that the government cannot reach the required threshold of predicate offenses because his conviction of second-degree domestic assault in Missouri, in violation of Mo. Rev. Stat. § 565.073, is not a violent felony.

Crimes are classified as violent felonies based on their elements. In Griffin's case, his second-degree domestic assault conviction was classified as a violent felony because it "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. 924(e)(2)(B)(I). Certain statutes, as the Missouri statute here, "criminalize[] multiple kinds of behavior," *United States v. Wilson*, 568 F.3d 670, 672 (8th Cir. 2009), some of which qualify as a violent felony, and others that do not. *See Descamps v. United States*, 133 S. Ct. 2276, 2283–85 (2013). "When a statute criminalizes both qualifying and non-qualifying conduct, courts apply a modified categorical approach and may consider the charging document, plea agreement, plea-colloquy transcript, or 'some comparable judicial record of this information' to determine under which portion of the statute the conviction arose." *United States v. Bynum*, 669 F.3d 880, 885 (8th Cir. 2012) (quoting *Shepard v. United States*, 544 U.S. 13, 26 (2005)).

Section 565.073.1 of the Missouri Revised Statutes criminalizes the following types of actions:

> (1) Attempt[ing] to cause or knowingly caus[ing] physical injury to such family or household member by any means, including but not limited to, by use of a deadly weapon or dangerous instrument, or by choking or strangulation; or
>
> (2) Recklessly caus[ing] serious physical injury to such family or household member; or
>
> (3) Recklessly caus[ing] physical injury to such family or household member by means of any deadly weapon.

Viewing the statute of conviction alone, one cannot readily discern under which subdivision Griffin was convicted. While subdivision (1) "has as an element the use, attempted use, or threatened use of physical force," 18 U.S.C. § 924(e)(2)(B)(i), subdivisions (2) and (3) criminalize only reckless conduct. Thus, while subdivision (1) is clearly a "violent felony" for ACCA purposes,[4] reckless conduct proscribed in subdivisions (2) and (3) arguably would not qualify. *See United States v. Ossana*, 638 F.3d 895, 903 (8th Cir. 2011) (holding that an Arizona conviction of aggravated assault based on "merely reckless use of a vehicle" was not a "crime of violence"); *see also United States v. Hennecke*, 590 F.3d 619, 621 n.2 (8th Cir. 2010) ("[W]e construe the statutory term 'violent felony' and the Guidelines term 'crime of violence' as interchangeable." (citation omitted)).

Thus we will apply the modified categorical approach to determine which subsection was used to convict Griffin. *See United States v. Montgomery*, 701 F.3d 1218, 1223 (8th Cir. 2012) (using the modified categorical approach when dealing with § 565.073). The Missouri indictment—to which Griffin eventually pleaded guilty—reveals that Griffin "attempted to cause physical injury to [his victim] by pushing her, and such conduct was a substantial step toward the commission of the crime of attempting to cause physical injury." The indictment makes clear that Griffin was convicted under § 565.073.1(1) for attempting to cause physical injury. We find this qualifies as a "violent felony" because Griffin was convicted of a crime that "has as an element the use, attempted use, or threatened use of physical force." 18 U.S.C. § 924(e)(2)(B)(i).

---

[4]*See United States v. Jones*, 574 F.3d 546, 552 (8th Cir. 2009) (holding that a conviction for second-degree domestic assault under § 565.073.1(1) constitutes a violent felony).

## 2. *Possession of a Controlled Substance with the Intent to Distribute*

Like "violent felon[ies]," there is more than one way a crime can be classified as a "serious drug offense." *Id.* § 924(e)(2)(A). In Griffin's case, his conviction for possession of a controlled substance with the intent to distribute, in violation of Mo. Rev. Stat. § 195.211, was classified as such because it is "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . *for which a maximum term of imprisonment of ten years or more is prescribed by law*." *Id.* § 924(e)(2)(A)(ii) (emphasis added). Griffin concedes his conviction under § 195.211 was for a Class B felony,[5] which under Missouri law is punishable by a maximum "term of years . . . not to exceed fifteen years." Mo. Rev. Stat. § 558.011.1(2).

Griffin argues, however, that this should not end the inquiry because of the specific sentencing circumstances unique to his case. Specifically, Griffin pleaded guilty through a plea agreement that only called for five years' imprisonment; thus, according to Griffin, the maximum punishment for *his* specific crime was five years. We reject Griffin's argument. In *United States v. Rodriguez*, the defendant argued that his convictions in the state of Washington for delivery of a controlled substance were not serious drug offenses for ACCA purposes. 553 U.S. 377, 380–81 (2008). The Washington statute stated that the penalty for the defendant's drug offense could not exceed five years, "but another provision specified that [a]ny person convicted of a second or subsequent offense could be imprisoned for a term up to twice the term otherwise authorized. Thus, by virtue of this latter, recidivist, provision respondent faced a maximum penalty of imprisonment for 10 years." *Id.* at 381 (alteration in original) (quotations and citations omitted). The Supreme Court held that the

---

[5]Section 195.211 distinguishes between Class C felonies, in which a defendant possesses five grams or less of marijuana, and Class B felonies, in which a defendant possesses any other controlled substance or more than five grams of marijuana. Griffin's concession that he was convicted of a Class B felony makes any inquiry into the statute's divisibility between Class B and C felonies unnecessary.

-11-

recidivism enhancement of ten years qualified the crime as a serious drug offense for ACCA purposes. *Id.* at 383. In *Rodriguez*, the defendant received a sentence of only 48 months' imprisonment but that did not change the maximum term of imprisonment as prescribed by law. *Id.* Similarly, we find that Griffin was convicted of a crime for which Missouri's statutes prescribed a maximum sentence of ten years or more. Whether Griffin himself was sentenced to ten years or more is not determinative. On this ground alone, we reject Griffin's argument.

### III. *Conclusion*

For the reasons stated herein, we affirm the district court's denial of Griffin's request for habeas relief.

BYE, Circuit Judge, concurring.

I agree remand for an evidentiary hearing is unnecessary in this matter. However, I write separately with regard to section II.A.

The Court finds Griffin's counsel made a reasonable strategic decision to forgo a suppression motion in part because the case proceeded to a bench trial and the judge would be able to accurately determine the credibility of Detective Taraski at trial. It is well-established that a § 2255 petitioner can "establish lack of diligence on the part of the attorney" if he or she can show a motion to suppress "what is essentially the only evidence against [the] defendant" would have been successful. United States v. Johnson, 707 F.2d 317, 320 (8th Cir. 1983) (citing United States v. Easter, 539 F.2d 663 (8th Cir. 1976)); see also United States v. Luke, 686 F.3d 600, 605 (8th Cir. 2012). This rule applies equally to bench trials as it does to jury trials. Even though Griffin elected to proceed to a bench trial, he still asked his counsel to file a motion to suppress. Griffin's counsel failed to file the motion, and because Griffin exercised his right not to testify in his own defense, the trial court never received Griffin's account of the Detective Taraski interrogation.

Although I find troubling Griffin's account of his trial representation, I agree in this instance a motion to suppress would have been unsuccessful because trial counsel knew Griffin signed a <u>Miranda</u> waiver, which indicated Griffin understood the enumerated rights and expressed his intention to waive his Fifth Amendment privilege. Griffin does not assert the <u>Miranda</u> waiver was invalid, and I agree the signed <u>Miranda</u> waiver would have made a motion to suppress unsuccessful. Because the motion to suppress would not have succeeded, I agree Griffin has failed to demonstrate ineffective assistance of counsel. <u>See</u> <u>Johnson</u>, 707 F.2d at 320 (requiring a § 2255 petitioner to show the motion to suppress would have succeeded).

—————————————————

-13-